UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 22-85 |
| | * | |
| COLSTON CONSTRUCTION, INC. ET AL | * | SECTION "L" (1) |

### ORDER AND REASONS

Before the Court is a Motion for Summary Judgment to Enforce a Settlement Agreement filed by Developers Surety and Indemnity Company. R. Doc. 33. No opposition has been filed. Considering the briefing and the applicable law, the Court now rules as follows.

### I.  BACKGROUND

This case arises out of disputes related to a set of construction contracts. Defendant Colston Construction Inc. ("Colston Construction") contracted with the United States of America to perform construction work on the VA Hospital in New Orleans under Contract No. 36C25678C0201, Project No. 626-17-104 (the "Project"). R. Doc. 1 at 3. Colston then entered a subcontract with Fabricari, LLC ("Fabricari") to perform work for the Project. *Id.*

To allegedly secure Colston Construction's performance on its payment obligations, Defendant/Cross Claimant/Third Party Plaintiff Developers Surety and Indemnity Company ("Developers") issued a Payment and Performance Bond for the Project. *Id.* To induce Developers to issue the alleged surety bonds, on or about September 13, 2018, Colston Construction and Third-Party Defendant, Jacob Colston, (collectively, "Colston") executed an Indemnity Agreement in favor of Developers, agreeing to "fully and continuously indemnify Developers against any and all loss or expenses of every kind or nature relating to the bonds." R. Doc. 33-1 at 1-2.

On January 11, 2022, Fabricari filed suit against Colston and Developers (as surety) related to the outstanding amounts due to it under its subcontract with Colston. R. Doc. 1. On March 29, 2023, Developers filed a cross-claim against Colston seeking payment for sums it paid pursuant to the payment bond under the Indemnity Agreement. R. Doc. 17.

On April 25, 2023, Fabricari settled with Developers thereby dismissing all its claims against Colston and Developers. R. Doc. 33-1 at 2. On July 7, 2023, Developers entered into a settlement agreement with Colston for payment. *Id.* Under that Settlement Agreement, the parties agreed to a figure of $150,000 to be paid by Colston in four installments. R. Doc 33-1 at 2-3. The first installment was due on June 30, 2023, and for $50,000. R. Doc. 33-4 at 2. The second installment was due on July 31, 2023, and for $50,000. The third installment was due on September 30, 2023, for $25,000. Lastly, the fourth installment was due on November 30, 2023, for $25,000.

On November 1, 2023, Developers filed the Notice of Settlement with the Court. R. Doc. 30. Accordingly, the Court issued an Order dismissing the case, without prejudice, allowing Developers "upon good cause shown, to reopen the action or to seek summary judgment enforcing the compromise if settlement is not consummated within a reasonable time." R. Doc. 31. After Colston's numerous alleged failures to make payment to Developers, Developers filed the instant motion for summary judgment to enforce their settlement agreement. R. Doc. 33.

## II.     LAW AND ANALYSIS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted). If the nonmovant fails to respond to the motion, a court may not "enter a 'default' summary judgment" for the movant, however a court is permitted "to accept [movant's] evidence as undisputed." *Preston v. Hertz Corp.*, 2003 WL 22938921, at *1 (N.D. Tex. Nov. 26, 2003); *Thorn v. RaceTrac Petroleum Inc.*, 2022 WL 965095, at *1 (5th Cir. Mar. 30, 2022) ("After [plaintiff] failed to file a timely response, the district court was entitled to accept as undisputed the facts offered in support of [defendant's] summary-judgment motion.").

Presently, the Court is being tasked with the enforceability of certain terms in a settlement agreement.

"Although the federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by principles of state law applicable to contracts generally." *Lockette v. Gretyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987) (quoting *Lee v. Hunt*, 631 F.2d 1171, 1173-74) (5th Cir. Unit A 1980)). Here, Louisiana law applies to this Court's analysis. Moreover, movants bear the burden of proving the obligation by a preponderance of the evidence. *See* La Civ. Code art. 1831 ("A party who demands performance of an obligation must prove the existence of the obligation.").

A compromise agreement is governed by the same general rules of construction applicable to contracts. *Brown v. Drillers, Inc.*, 630 So.2d 741, 747 (La. 1994). Louisiana law provides, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no

further interpretation maybe made in search of the parties' intent." La. Civ. Code art. 2046. "Under this Article, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under pretext of pursuing its spirit." Official Comment, La. Civ. Code art. 2046. Thus, when a contract's terms are clear, the Court shall only seek the meaning and intent of the parties within the four corners of the instrument and cannot look to parol evidence. La. Civ. Code art. 1848; *Hampton v. Hampton*, 713 So.2d 1185, 1189 (La. App. 1 Cir. 1998); *See also Claitor v. Brooks*, 137 So.3d 638, 644-45 (La. App. 1 Cir. 2013) ("[W]here the words of a contract are clear, explicit and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the instrument and cannot be explained . . . by parol evidence.").

In its motion, Developers argue that Colston has failed to make all four payments by the due dates it agreed to under the Settlement Agreement. R. Doc. 33-1. Despite giving Colston several formal notices after it repeatedly defaulted on its payments, Developers argue that Colston only partially remitted funds owed to Developers. *Id.* at 4-6. Developers further argue that though it provided Colston additional time to make the payments and Colston affirmed that it would cure its deficiencies, Colston's continuous failure to make payments constitutes a breach of the Settlement Agreement. *Id.* at 6. To date, Developers state that it has only received $60,000 from Colston, leaving a default amount owed of $90,000.

Developers further argue that Colston's default on several payments triggers two provisions of the Settlement Agreement. The first of which allows Developers to substitute the compromised amount owed ($150,000) with the amount that Colston owes Developers in connection to their underlying Indemnity Agreement. That provision provides:

> The Parties agree that should [Colston] fail to make an Installment per the terms of the Agreement and such failure remains following notice and opportunity to cure as described in this section, such uncured failure shall cause not just the remaining Installments to be

due, but any and all remaining Amounts Owing to become immediately due and payable by [Colston].

*Id.* at 6; R. Doc. 33-4 at 2. Developers aver that the Settlement Agreement defines "Amounts Owing" as the sums Developers has paid pursuant to Payment Bonds, for Colston, on numerous projects. R. Doc. 33-1 at 6-7. Second, Developers argue that it is entitled to attorney's fees, interests, and costs pursuant to the Settlement Agreement. That provision provides:

> JURISDICTION & VENUE. . .The Parties agree that the United States District Court for the Eastern District of Louisiana is the court of proper jurisdiction and venue for resolution of any dispute arising under this Agreement. The prevailing party in any action to enforce this Agreement shall be entitled (both at trial and upon appeal) to attorney's fees, interest, costs, and expenses of litigation.

*Id.* at 4. This amount, as originally pled by Colston, totals to $182,051.62 plus the continuing costs, fees, and interest.[1] *Id.* at 6. Developers notes, however, Colston would be entitled to $60,000 credit on that balance as a result of the partial payments it has remitted to Developers. *Id.* Accordingly, it requests that this Court grant its motion and find that it is entitled to the entire remaining Amounts Owing of $122,051.62, plus interest, attorney's fees, costs, and litigation expenses as allowed under the Settlement Agreement.

There has been no response in opposition to the summary judgment filed by Colston. The Court, therefore, considers the facts in the motion undisputed. *Thorn v. RaceTrac Petroleum Inc.*, No. 21-30492, 2022 WL 965095, at *1 (5th Cir. Mar. 30, 2022) ("After [plaintiff] failed to file a timely response, the district court was entitled to accept as undisputed the facts offered in support of [defendant's] summary-judgment motion."). Accordingly, the Court finds that Developers is

---

[1] The Court notes that Developers ask for $189,193.62. Included in that amount is Developer's request for $7,142 for attorney's fees, costs, and expenses. However, without providing additional evidence regarding reasonability of such costs, the Court declines to find that Developers is presently entitled to the $7,142. For reasons explained in the next paragraph of the opinion, Developers will have the opportunity to present the total amount of attorney's fees and other costs of litigation that it may be entitled to at a later time for the Court's consideration.

entitled to the remaining Amounts Owing of $122,051.62, plus interest, attorney's fees, costs, and litigation expenses. Because the award of interest, attorney's fees, and litigation expenses cannot be determined on the present record, the Court will hold a hearing to calculate these amounts.

### III.     CONCLUSION

**IT IS ORDERED** that Developers' Motion for Summary Judgment to Enforce Settlement Agreement, R. Doc. 33, is **GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that Colston shall pay to Developers funds owed it in the amount of $122,051.62.

**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that Colston shall bear and be assessed with all court costs and expenses, including attorneys' fees, and interest incurred as a result of the Settlement Agreement. Accordingly, **IT IS FURTHER ORDERED** that a hearing be set for May 22, 2024, at 9:00 A.M. to determine the award of interest, attorney's fees, costs, and litigation expenses. By May 14, 2024, Developers should submit time records and other relevant documents to justify such an award for the Court to review. Additionally, Developers must justify the date at which amounts in the Settlement Agreement became overdue to guide the Court in making its findings on awarding legal interest.

New Orleans, Louisiana, this 7th day of May, 2024.

_____
United States District Judge